IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD VELA, SR and
RICHARD VELA, JR,

        Plaintiffs,

        v.                                No. 2:23-cv-00430-KWR-GJF

CARLSBAD MEDICAL CENTER, LLC,
PECOS VALLEY OF NEW MEXICO, LLC
d/b/a PECOS VALLEY PHYSICIAN GROUP,
and CHSPSC, LLC d/b/a COMMUNITY
HEALTH SYSTEMS,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant Carlsbad Medical Center, LLC's Motion to Exclude Expert Opinions Regarding Nursing Care. Doc. 34. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's Motion is not well-taken and, therefore, is **DENIED**.

## BACKGROUND

This case is a medical malpractice dispute arising out of Plaintiff Richard Vela Sr.'s treatment at the Carlsbad Medical Center in Carlsbad, New Mexico. Doc. 1-2, Am. Comp. at ¶24. On September 18, 2019, Mr. Vela Sr. presented at the Carlsbad Medical Center with symptoms of shortness of breath and was subsequently diagnosed with heart failure and aflutter (atrial flutter a cardiac arrhythmia), which can cause blood clots to form. *Id*. at ¶25. According to Plaintiffs, the emergency room administered heparin, an anticoagulant; amiodarone, to control and treat aflutter; and Lasix, to treat heart failure. *Id*. at ¶26. Plaintiffs state Mr. Vela Sr.'s electrocardiogram

showed aflutter with an atrioventricular block, which can be a sign of infectious endocarditis, a heart infection. *Id*. at ¶28. On September 19 at 10:30AM, a cardiac catheterization was performed to assess coronary arteries and a transesophageal echocardiogram ("TEE") was done without a written report. *Id*. at ¶37. A cardioversion was then performed to stop the aflutter, and Mr. Vela Sr. converted to a normal sinus rhythm. *Id*. at ¶ 38. No anticoagulation was given before, during, or after the cardioversion. *Id*. Plaintiffs claim this is a breach of the standard of care because cardioversions have an increased risk of causing embolisms and strokes. *Id*. at ¶39. Mr. Vela Sr. subsequently was transferred to Lubbock University Medical Center for a higher level of care. *Id*. at ¶43. According to Plaintiffs, Mr. Vela Sr. did not receive antibiotics, diabetic medications, or continue on any anticoagulants while at Carlsbad Medical Center. *Id*. at ¶44. Despite doing well initially and continuing heparin, amiodarone, and diabetes medication at the Lubbock facility, on September 21, 2019, Mr. Vela Sr. fell back into bed with a facial droop. *Id*. at ¶¶49-55. A CT angiogram showed a left middle-cerebral-artery single-large-vessel stroke. *Id*.

Since his discharge, Mr. Vela Sr. currently receives twenty-four-hour care from his son, Mr. Vela Jr, and receives physical therapy three times a week. *Id*. at ¶¶67-68. Mr. Vela Sr. does not have bowel or bladder function and is cognitively impaired. *Id*. at ¶¶69-72.

On July 5, 2022, Plaintiffs filed suit against Defendants in state court. Plaintiffs claim Carlsbad Medical Center failed to administer antibiotics "for a positive gram stain "positive cocci in chains," which is known to cause endocarditis, which itself can cause septic emboli and stroke." *Id*. at ¶74. Plaintiffs claim the interventional cardiologist failed to review labs, including gram stain results, prior to cardiac catheterization, and failed to administer anticoagulation appropriately in relation to the cardioversion, which can cause clotting and stroke. *Id*. at ¶¶75-84. The cardiac catheter shows that Mr. Vela Sr.'s coronary arteries were not the cause of his decreased EF. *Id*. at

¶41.   The proper standard of care is to administer anticoagulation during cardioversion, as it decreases the risk of clotting. *Id*. Because the interventional cardiologist failed to document the findings of the TEE, Defendants breached the standard of care because the interventional cardiologist either conducted a limited view of the TEE or did not document the findings. *Id*. As to the theories within the Complaint, Plaintiffs assert negligence of healthcare providers, breach of ordinary care, institutional and systemic failures, breach of fiduciary duty, unfair trade practices, and damages. Am. Comp. at pp. 8-14.  Plaintiffs argue that Defendants, "by and through their employees, apparent agents, and agents, failed to: (a) Properly evaluate, manage, monitor, and treat Mr. Vela Sr.'s condition; (b) Maintain a high index of suspicion for infection and risks of stroke in the face of positive blood culture, abnormal EKG, and cardiac arrhythmia; (c) Act with proper care prior to, during and after cardiac catheterization; (d) Act with urgency in the face of a life-threatening condition; (e) Consult with any or an appropriately qualified physician; and (f) Properly credential, supervise, retain, train, and retrain providers." *Id*. at ¶88.

On May 18, 2023, CHSPSC, LLC d/b/a Community Health Systems removed this case to this Court from the Fifth Judicial District Court.  Doc. 1.  On February 14, 2024, Defendant Carlsbad Medical Center, LLC filed the instant motion, seeking to exclude expert opinions regarding nursing care.  Doc. 34.

**ANALYSIS**

Movant argues Plaintiffs' claims pertain to the treatment that physicians provided to Mr. Vela Sr.; Plaintiffs' claims do not address nor concern nursing care.  Doc. 34 at 2.  Plaintiffs' allegations do not refer to nurses nor does Plaintiffs' Preliminary List of Persons with Knowledge reference nurses or nursing experts, but rather identifies expert witnesses and healthcare providers broadly. *Id*. at 2-3.  Plaintiffs had until September 29, 2023, to move to amend the Complaint and

until October 6, 2023, to add additional parties. *Id*. Despite the expiration of these deadlines, Plaintiffs never moved to amend the Complaint to allege negligence specifically as to nursing. Now, Plaintiffs have designated Kendra Barrier, Ph.D, MSN, RN, CNE, to offer opinion testimony as to Mr. Vela Sr.'s care. *Id*. Furthermore, Plaintiffs intend to elicit testimony from Omar Al-Heeti, MD and Roger Laham, MD, related to nursing care. *Id*. at 3-4. Because of Plaintiffs' failure to include nursing as a theory within the Complaint, opinions on nursing care cannot help the jury determine facts at issue and therefore, should be excluded under Fed.R.Evid. 702 as irrelevant and confusing the issues.[1] Doc. 34 at 4. This Court disagrees with Defendant and denies its Motion to Exclude.

Under Federal Rule of Evidence 401, evidence is relevant if, "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.R.Evid. 401. Relevant evidence is admissible but can be excluded under Rule 403 if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 402-403.

The purpose of a motion *in limine* to exclude evidence "is to aid the trial process by enabling the Court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008), aff'd, 402 F. App'x 337 (10th Cir. 2010) citing, *United States v. Cline*, 188 F.Supp.2d 1287, 1291 (D.Kan.2002) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2nd Cir.1996)). In many cases, "evidentiary

---

[1] Defendant Carlsbad Medical Center, LLC also argues that it reserves the right to challenge Plaintiffs' disclosed experts on other grounds, since it has not had an opportunity to depose the witnesses at issue. Doc. 34 at 4. Furthermore, Defendant indicates it intends to challenge the experts at issue on other appropriate grounds including qualifications, methodology, and other Rule 702 issues. *Id*.

rulings should be deferred until trial so that questions of foundation, relevancy and potential

prejudice may be resolved in the proper context." *Id*. citing, *Sperberg v. Goodyear Tire & Rubber*

*Co.*, 519 F.2d 708, 712 (6th Cir.1975), *Rettiger v. IBP, Inc.*, 1999 WL 318153, at *2 (D.Kan.1999).

> Under Fed.R.Evid. 702:
>
> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Rule 702 requires that an expert's testimony is both reliable, that the witness is qualified to testify

on the subject, and relevant – that the testimony will assist the trier in determining a fact in issue.

*United States v. Durango & Silverton Narrow Gauge R.R. Co.*, 571 F. Supp. 3d 1203, * 2 (D. Colo.

2021) citing, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–95 (1993); *Goebel*

*v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).  In interpreting Rule

702, under *Daubert*, a district court serves as a "gatekeeper" by reviewing proffered expert opinion

for relevance pursuant to Fed.R.Evid. 401.  *Id*.  This Court has discretion in evaluating whether an

expert's testimony is helpful, qualified, and reliable under Rule 702.  *Id*. citing, Goebel, 214 F.3d

at 1087; *United States v. Velarde*, 214 F.3d 1204, 1208–09 (10th Cir. 2000).

     Despite citing Rule 702, Defendant has not raised a *Daubert* challenge questioning the

qualifications, methodology, or credentials of Plaintiffs' proposed experts.  Doc. 34 at 4.  Because

Defendant has not raised a *Daubert* challenge at this juncture, the Court will not address

Defendant's motion under the *Daubert* standard.  Instead, Defendant Carlsbad Medical Center,

LLC asserts that Plaintiffs' expert witnesses and their expected testimony regarding substandard

nursing care are outside the scope of the Complaint, lack relevancy, and confuse the issues.

"The responsibility for ensuring that one's claims are properly presented lies with the litigant, not the court." *Norton v. The City Of Marietta, OK*, 432 F.3d 1145, 1151 (10th Cir. 2005). "As a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, "provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits." *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991) citing, 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219 at 194 (1990); *see, e.g., Hanson v. Hoffmann*, 628 F.2d 42, 53 n. 11 (D.C.Cir.1980). The purpose of "fact pleading" under Fed.R.Civ.P. 8(a)(2), "is to give the defendant fair notice of the claims against him without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the parties have opportunity for discover." *Id*. citing, Wright & Miller, §§ 1215, 1219, at 136–147, 188–194.

Here, in addition to the numerous and specific allegations that Plaintiffs outline, the Complaint asserts negligence of healthcare providers, breach of ordinary care, institutional and systemic failures, breach of fiduciary duty, unfair trade practices, and damages. Am. Comp. at pp. 8-14. Plaintiffs argue that Defendants, "by and through their employees, apparent agents, and agents, failed to: (a) Properly evaluate, manage, monitor, and treat Mr. Vela Sr.'s condition; (b) Maintain a high index of suspicion for infection and risks of stroke in the face of positive blood culture, abnormal EKG, and cardiac arrhythmia; (c) Act with proper care prior to, during and after cardiac catheterization; (d) Act with urgency in the face of a life-threatening condition; (e) Consult with any or an appropriately qualified physician; and (f) Properly credential, supervise, retain, train, and retrain providers." *Id*. at ¶¶8-9, 11, 29, 88. Accordingly, this Court finds while Plaintiffs may not have described in its Complaint with the granularity and specificity that Defendant seeks, Plaintiffs' claims regarding substandard nursing care are well within the scope of the Complaint.

6

Plaintiffs' Complaint sufficiently describes the theories under which they can recover – namely, that through medical and ordinary negligence, breach of fiduciary duty, and unfair trade practices of healthcare providers via employees (which presumably includes nurses and nursing care), apparent agents, and agents, Mr. Vela Sr. is entitled to damages. *Id*.; *see generally* Am. Comp. While Defendant is correct in its assertion that a claim not in a complaint is not properly at issue, Plaintiffs properly included their claims within the Complaint. Through the proposed expert witnesses and evidence, Plaintiffs do not assert a new theory of liability, let alone one that would prejudice Defendant.

Defendant specifically raises the issues that the Complaint "fails to mention specific actions that Plaintiffs' experts now opine are breaches in the standard of care, such as the nurses' alleged failure to track Mr. Vela Sr.'s aPPT levels. Moreover, while the Complaint does allege that the failure to give Mr. Vela Sr. anticoagulants was a breach of the standard of care, the Complaint alleges that a cardiologist was responsible for that failure…A claim that a cardiologist failed to give anticoagulants during cardioversion is different from a claim that a nurse failed to follow physician orders to titrate anticoagulants post cardioversion." Doc. 34 at 9.

This Court disagrees with Defendant and finds that it is clear from the face of the Complaint that Plaintiffs asserted theories of vicarious liability. Am. Comp. at ¶¶8-9, 11, 29, 88. While Defendant may be correct that the Complaint does not precisely and accurately describe Carlsbad Medical Center's failure to administer necessary anticoagulation therapy in a high-risk patient, Plaintiff's allegations are sufficient. To expect a plaintiff to describe with scientific precision the nuances of anticoagulation therapy on the face of the Complaint runs afoul of the purposes of Fed.R.Evid. 702. "An intelligent evaluation of facts is often difficult or impossible without the

application of some scientific, technical, or other specialized knowledge.  The most common source of this knowledge is the expert witness[.]"  Fed.R.Evid. 702 advisory committee's notes. Accordingly, given this Court has found nursing care is well within scope of the Complaint, this Court also finds the proposed expert witnesses and evidence are relevant under Fed.R.Evid. 401. Defendant has not explained how the proposed expert testimony fails to make a fact more or less probable than it would be without the evidence.  Fed.R.Evid. 401.  Expert testimony as to nursing care is undoubtedly of consequence in this case given the nature of Plaintiffs' claims.  *Id*.  Nor has Defendant demonstrated how such testimony is impermissible under Rule 403, especially since at the time of filing, Defendant had not yet deposed the expert witnesses in question.  Fed.R.Evid. 403; Doc. 34 at 14.  Therefore, an evidentiary ruling at this juncture would be improper.  *Sperberg*, 519 F.2d at 712, *Rettiger*, 1999 WL 318153 at *2.  This Court denies Defendant's request to exclude the proposed evidence and expert witnesses.

## CONCLUSION

**IT IS THEREFORE ORDERED**, for the reasons states above, that Defendant Carlsbad Medical Center, LLC's Motion to Exclude Expert Opinions Regarding Nursing Care (Doc. 34) is **DENIED**.

_____/S./_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE